UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SARA CATHERINE EKKENS,      ) Case No. 1:18CV0364
                            )
            Plaintiff,      )
                            )
      v.                    ) MAGISTRATE JUDGE DAVID A. RUIZ
                            )
COMMISSIONER OF SOCIAL      )
      SECURITY,             )
                            )
                            )
            Defendant.      ) MEMORANDUM AND ORDER

Plaintiff Sara Catherine Ekkens ("Ekkens" or "Plaintiff") challenges the final

decision of Defendant Commissioner of Social Security ("Commissioner"), denying

her applications for a period of disability ("POD") and disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq.*

("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before

the court is whether the final decision of the Commissioner is supported by

substantial evidence and, therefore, conclusive. For the reasons set forth below, the

Commissioner's final decision is REVERSED and REMANDED.

I.  PROCEDURAL HISTORY

On January 26, 2015, Ekkens filed an application for a POD and DIB,

alleging disability beginning September 10, 2013. (R. 8, Transcript ("tr."), at 15,

150, 169-170, 179-190.) Ekkens' application was denied initially and upon

reconsideration. (R. 8, tr., at 15, 70-86, 87-102, 103-106.) Thereafter, Ekkens filed a request for a hearing. (R. 8, tr., at 117-118.)

An Administrative Law Judge ("the ALJ") held the hearing on March 8, 2017. (R. 8, tr., at 45-68.) Ekkens appeared at the hearing, was represented by counsel, and testified. (*Id*. at 47, 50-63.) A vocational expert ("VE") also attended the hearing and provided testimony. (*Id*. at 47, 63-67.) On May 30, 2017, the ALJ issued the underlying decision, applying the standard five-step sequential analysis to determine whether Ekkens was disabled. (R. 8, tr., at 15-36; *see generally* 20 C.F.R. § 404.1520(a).) Based on his review, the ALJ concluded Ekkens was not disabled. *Id*. at 35. The Appeals Council denied Ekkens' request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (R. 8, tr., at 1-3.) Ekkens filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g). The parties have completed briefing in this case. Ekkens presents two legal issues for the court's review, arguing the ALJ erred when evaluating opinions from plaintiff's treating mental health providers and plaintiff's circulatory disorder. (R. 13, PageID #: 1203.)

## II. PERSONAL BACKGROUND INFORMATION

Ekkens was born in 1964, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, but she subsequently changed age category to closely approaching advanced age. (R. 8, tr., at 34, 50, 169.) Plaintiff has at least a high school education and is able to

communicate in English. (R. 8, tr., at 34, 50, 179, 181.) Ekkens had past relevant

work as a dental assistant, an anesthesiology assistant, and a telephone solicitor.

(R. 8, tr., at 34, 53-54, 64.)


## III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Ekkens' brief alleging error

by the ALJ. Ekkens applied for DIB benefits on January 26, 2015, alleging

disability beginning September 10, 2013. (R. 8, tr., at 15, 150, 179-190.) She listed

the physical and mental conditions that limit her ability to work as: "major

depressive mental disorder, epilepsy, rheumatoid arthritis, myoproliferative [*sic*]

blood disorder (DVTs and Pes), extreme [eczema]." (R. 8, tr., at 180.)

Robelyn Marlow, Ph.D. completed a psychiatric review on April 6, 2015,

which found that Ekkens had affective disorders (12.04). (R. 8, tr., at 78.) These

disorders resulted in moderate restriction of activities of daily living and difficulties

in maintaining social functioning, concentration, persistence or pace. *Id.*

Dr. Marlow also completed a mental RFC assessment on April 6, finding that

Ekkens was moderately limited in her ability to carry out detailed instructions, to

maintain attention and concentration for extended periods, and in the ability to

complete a normal workday without interruptions form psychologically based

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 8, tr., at 83.) Dr. Marlow opined that Ekkens can concentrate and persist at simple tasks. *Id.* Dr. Marlow also assessed that Ekkens was moderately limited in her ability to interact appropriately with the general public, and in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 8, tr., at 83-84.) In addition, the psychologist rated Ekkens as moderately limited in the ability to respond appropriately to changes in the work setting. *Id.* at 84. Dr. Marlow stated that Ekkens is capable of performing simple repetitive tasks and some moderately complex routine tasks without strict production quotas, but no fast-paced tasks; and she is not capable of significant interactions with others. *Id.*

Ekkens presented for a consultative examination with Patrick Marinello, M.D., on May 30, 2015. (R. 8, tr., at 646-650.) Plaintiff reported to Dr. Marinello that she had a history of rheumatoid arthritis since 2012, which affects her back, left knee, and both hands. *Id.* at 646. She reported symptoms that included joint pain and stiffness in both hands. *Id.* Dr. Marinello observed edema in both legs, and noted Ekkens was wearing compression stockings. *Id.* at 648, 649-650. The doctor stated that there was no tenderness to range of motion on her musculoskeletal exam, she had good range of motion and no effusion or crepitus, and was able to complete all the musculoskeletal tasks. *Id.* at 650. Manual muscle testing was normal. *Id.* at 653-654.

4

An X-ray of the lumbar spine indicated lumbar spondylosis with degenerative disc disease. *Id.* at 651. The left knee appeared normal on X-ray, there was no evidence of fracture, no soft tissue swelling or abnormal calcifications. *Id.* at 652.

Dr. Marinello indicated that claimant's condition appeared to be relatively stable. *Id.* at 650. The doctor opined that the claimant "can be expected to sit, stand and walk normally in an 8-hour workday with normal breaks." *Id.* She does not have significant limitations with lifting or carrying weight, and there are no limitations on bending, stooping, crouching, and squatting. *Id.* Dr. Marinello opined that Ekkens had no manipulative limitations on reaching, handling, feeling, grasping or fingering. *Id.*

State agency medical consultant Steve E. McKee, M.D., completed a physical residual functional capacity assessment for Ekkens on July 10, 2015. (R. 8, tr., at 80-82.) Dr. McKee assessed a range of medium exertion, with the ability to stand or walk for a total of six hours, and to sit for about six hours, of an 8-hour workday. (R. 8, tr., at 80.) Plaintiff could frequently climb ramps or stairs, but never climb ladders, ropes, or scaffolds. *Id.* at 81. She can frequently kneel or crouch, and can occasionally stoop or crawl. *Id.* The doctor attributed these limitations to degenerative disc disease of the lumbar spine, rheumatoid arthritis, a history of epilepsy, and pain. *Id.* Ekkens' capacity for handling (gross manipulation) and fingering (fine manipulation) were limited to frequently for both hands. *Id.* Ekkens was to avoid concentrated exposure to hazards, particularly unprotected heights.

*Id.* at 82. These limitations were attributed to degenerative disc disease of the lumbar spine, rheumatoid arthritis, a history of epilepsy, and pain. *Id.* at 81-82.

On August 3, 2015, Natalia Parkanzky, CRNP[2], completed a medical source statement on Ekkens' physical capacity. (R. 8, tr., at 658-659.) Nurse Parkanzky indicated that lifting and carrying were affected by Ekkens' impairment of hand pain (tingling), to the extent that she could lift or carry five pounds occasionally, and no amount of weight frequently. *Id.* at 658. Parkanzky indicated that standing and walking were affected by Ekkens' impairment, limiting her to a total of six hours in a workday that she could stand or walk, one to two hours without interruption. *Id.* Likewise, she was limited to sitting a total of six hours during a workday, one to two hours without interruption. *Id.* The assessment of claimant's abilities to stand, walk, and sit were based on her ability to do activities of daily living. *Id.* Parkanzky indicated that Ekkens could rarely climb, and occasionally balance, stoop, crouch, kneel, or crawl. *Id.*

Nurse Parkanzky assessed that Ekkens could occasionally reach, push or pull, and use gross manipulation. (R. 8, tr., at 659.) She could rarely use fine manipulation, because of swelling of her hands with prolonged activity. *Id.* Parkanzky indicated that Ekkens needed an at-will sit/stand option. *Id.* Although Parkanzky found that claimant experienced mild pain, she indicated that it interfered with concentration, took the claimant off task, and caused absenteeism.

---

[2] Certified Registered Nurse Practitioner

*Id.* The nurse stated that Ekkens needs to elevate her legs 45 degrees, three times a day for swelling. *Id.* Also, the plaintiff would require an additional two hours of rest time per day, beyond the standard lunch period and two 15-minute breaks. *Id.*

On August 4, 2015, Richard Hill, M.D., and Bruce Catalano, LISW, completed a medical source statement on Ekkens' mental capacity. (R. 8, tr., at 660-661; *see also* tr., at 662-663 (duplicate).) In the area of making occupational adjustments, Dr. Hill's and Catalano's statement assessed that Ekkens had a capability for occasionally: maintaining attention and concentration for extended periods of 2-hour segments and regular attendance and punctuality; interacting with supervisors; working in coordination with, or in proximity to, others without being unduly distracted or distracting; dealing with work stress; completing a normal workday without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable amount of rest periods. *Id.* at 660. Ekkens had the capability to constantly deal with the public, and a capacity to frequently make occupational adjustments in six other areas. *Id.*

Regarding Ekkens' intellectual functioning, the statement assessed that plaintiff had the capacity to occasionally understand, remember and carry out complex job instructions; and the capacity to frequently understand, remember and carry out detailed but not complex job instructions, as well as simple job instructions. (R. 8, tr., at 661.) The statement also assessed that plaintiff had the capacity to occasionally socialize, behave in an emotionally stable manner, and manage funds or schedules. *Id.* She had the capacity to frequently maintain her

7

appearance, and to relate predictably in social situations. *Id.* Dr. Hill and Catalano identified the diagnoses that supported their assessment as Major Depressive Disorder, Recurrent, and Panic Disorder. *Id.*

On October 15, 2015, state agency medical consultant Gary Hinzman, M.D., completed a physical RFC assessment for Ekkens on reconsideration. (R. 8, tr., at 96-98.) Dr. Hinzman assessed a range of light exertion, with the ability to stand or walk for a total of six hours, and to sit for about six hours, of an 8-hour workday. (R. 8, tr., at 96-97.) Otherwise, Dr. Hinzman adopted the identical limitations identified earlier by Dr. McKee. *Id.* at 97-98.

A psychiatric review completed by Tonnie Hoyle, Psy.D., on October 20, 2015, on reconsideration agreed with the assessment from Dr. Marlow, finding that Ekkens had affective disorders (12.04), which resulted in moderate restriction of activities of daily living, difficulties in maintaining social functioning, and in maintaining concentration, persistence or pace. (R. 8, tr., at 94-95.) Dr. Hoyle's mental RFC assessment was also in complete accord with Dr. Marlow's. *Id.* at 99-100.

Claimant's treating hematologist Timothy O'Brien, M.D., indicated in a February 3, 2017, note that Ekkens had a prior history of leg venous thrombosis, which resulted in chronic lower leg pains from post phlebetic syndrome. (R. 8, tr., at 1125.) Dr. O'Brien stated: "For this, she requires elevation of her legs for 15 minutes, 4 times per day." *Id.*

On March 1, 2017, Dr. Hill completed a second medical source statement on Ekkens' mental capacity. (R. 8, tr., at 1126-1127.) The form used different criteria than that completed by Dr. Hill on August 4, 2015. In the area of understanding, remembering or applying information, Dr. Hill indicated that Ekkens had marked limitation in sequencing multi-step activities. *Id.* at 1126. In the area of interacting with others, Dr. Hill indicated that Ekkens had extreme limitations in handling conflicts with others; responding to requests, suggestions, and criticism; and keeping social interactions free of excessive irritability, sensitivity, and argumentativeness. *Id.* In the area of concentration, persistence or maintaining pace, Dr. Hill indicated that Ekkens had extreme limitations in her ability to work at an appropriate and consistent pace; to sustain an ordinary routine and regular attendance at work; and to work a full day without needing more than the allotted number or length of rest periods. (R. 8, tr., at 1127.) The doctor indicated that claimant had marked limitations in her ability to complete tasks in a timely manner; to ignore or avoid distractions while working; and to work close to, or with, others without interrupting or distracting them. *Id.* In the area of adapting or managing oneself, Dr. Hill determined that Ekkens had extreme limitations in her ability to respond to demands, and to manage her psychologically-based symptoms. *Id.*

Dr. Hill diagnosed Ekkens with Major Depressive Disorder, non-severe without psychosis. (R. 8, tr., at 1127.) He noted she had days when she was unable to get out of bed or to shower, and that she handles even minor stresses poorly. *Id.*

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his

May 30, 2017, decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.  The claimant has not engaged in substantial gainful activity since September 10, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: spine disorder, inflammatory arthritis, obesity, epilepsy, major depressive disorder, and panic disorder (20 C.F.R. 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps or stairs and never climb ladders, ropes or scaffolds.  She can occasionally stoop, frequently kneel or crouch, and occasionally crawl.  The claimant can frequently handle and finger bilaterally.  She must avoid concentrated exposure to hazards such as unprotected heights, moving machinery, and commercial driving.  The claimant can perform simple tasks.  She can perform goal-oriented work, but cannot work at a production-rate pace.  The claimant can interact with supervisors, coworkers, and the public if that interaction is limited to speaking and signaling as it is defined in the SCO.[3]

6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

---

[3] **Error! Main Document Only.**[Selected Characteristics of Occupations]

7.  The claimant was born on *** 1964, and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 8, tr., at 17-19, 21, 33-35.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. §404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* §404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* §404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* §404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* §404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of

evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).


VII. ANALYSIS

Ekkens presents the following legal issues for the court's review:

1. Whether the administrative law judge properly weighed the opinions of plaintiff's treating mental health providers, where the judge gave great weight to the opinions, but then failed to incorporate

many of the limitations in the opinion into the residual functional capacity finding.

2. Whether the administrative law judge properly evaluated plaintiff's circulatory disorder and the need for plaintiff to periodically elevate her legs.

(R. 13, PageID #: 1203.)

### A. Circulatory Disorder

The court considers the second claim first, because it involves the ALJ's Step Two analysis. Ekkens contends that the ALJ did not properly evaluate her coagulation disorder, and erred in not imposing any limitations based on the resulting need to elevate her legs. (R. 13, PageID #: 1203, 1220.)

At the second step of the disability analysis, the plaintiff has the burden to show that she suffers from a severe medically determinable physical or mental impairment. *Wilson*, 378 F.3d at 548 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Here, the ALJ's decision indicates at Step Two that Ekkens has the following severe impairments: spine disorder, inflammatory arthritis, obesity, epilepsy, major depressive disorder, and panic disorder. (R. 8, tr., at 18.)

Once the ALJ determines that a claimant has at least one severe impairment, the ALJ considers all impairments, severe and non-severe, in the remaining steps. *Pompa v. Commissioner*, No. 02-2335, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). A failure to find an allegedly severe impairment may not constitute reversible error where the ALJ determines that a claimant has other severe impairments and continues with the remaining steps of the disability evaluation.

14

*Winn v. Commissioner*, No. 14-3499, 2015 WL 3702032, at *10 (6th Cir. June 15, 2015) (citing *Maziarz v. Secretary, HHS*, 837 F.2d 240, 244 (6th Cir. 1987)); *Fisk v. Astrue*, No. 06-4677, 2007 WL 3325869, at *4 (6th Cir. Nov. 9, 2007). Because the ALJ found that Ekkens had severe impairments at Step Two, "whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa*, 2003 WL 21949797, at *1.

The ALJ found that the Ekkens had "non-severe impairments of other disease of the circulatory system[,]" including a history of deep vein thrombosis (DVT), chronic venous insufficiency, post-thrombotic syndrome, and myeloproliferative disorder, treated with warfarin. (R. 8, tr., at 18, citing MER.) The ALJ stated, however, that "aside from occasional [leg] edema, examinations have not revealed any significant ongoing abnormalities associated with circulatory system disorder, and notably, recent testing has been negative for evidence of acute pulmonary embolism or repeat DVT." *Id.* (internal citations omitted).

Although Ekkens argues that the ALJ's decision did not properly consider her circulatory impairment and the related need to elevate her legs, the ALJ's decision addressed those issues. (R. 8, tr., at 18, 22, 32.) The ALJ noted that treating hematologist Dr. O'Brien stated that claimant required leg elevation for 15 minutes, 4 times per day, which the ALJ stated "can be accommodated with regularly scheduled work breaks." *Id.*, citing tr., at 1125. Notably, Dr. O'Brien did not indicate that claimant needed to elevate her legs four times during the workday, but simply required "elevation of her legs for 15 minutes, 4 times per day." *Id.*

15

Nurse Parkanzky stated that Ekkens needs to elevate her legs three times a day. *Id.* at 659. The ALJ properly found that the need to elevate her legs can be accommodated within normal work breaks. In light of the evidence, the ALJ determined that Plaintiff's other disease of the circulatory system "has no more than a minimal impact on the claimant's ability to perform basic work-related tasks, and is therefore non-severe." *Id.* at 18.

The ALJ continued on to the remaining steps of the disability analysis, and provided a thorough analysis of the medical record when assessing Plaintiff's residual functional capacity. (R. 8, tr., at 19-33; *see generally Fisk,* 2007 WL 3325869, at *4; *Maziarz,* 837 F.2d at 244.) When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *Nejat v. Commissioner,* No. 09-5193, 2009 WL 4981686, at *2-*3 (6th Cir. Dec. 22, 2009) (citing *Maziarz,* 837 F.2d at 244). The court finds that the ALJ properly considered all of claimant's impairments, including her non-severe impairments, when assessing her residual functional capacity.

### B. Weight of Opinion Evidence

Ekkens contends that the ALJ did not properly weigh the opinions of her treating mental health providers, asserting the ALJ "gave great weight to the opinions, but then failed to incorporate many of the limitations in the opinion into the residual functional capacity finding." (R. 13, PageID #: 1203, 1217-1218.) Plaintiff argues that the ALJ failed to build an accurate and logical bridge between

16

the evidence and his conclusion. *Id.* at 1218, citing *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011). Specifically, she contends that the ALJ erred when considering the August 2015 opinions authored by Dr. Hill and LISW Catalano. *Id.* at 1218-1219.

It is well-recognized that an ALJ must generally give greater deference to the opinions from treating providers than to non-treating healthcare providers. *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," or treating source rule, is a reflection of the Social Security Administration's awareness that physicians and other healthcare providers who have a long-standing treatment relationship with an individual are well-equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). The treating source doctrine requires opinions from treating providers to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating source(s). *Blakley*, 581 F.3d at 406; *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008). Those good reasons must be supported by evidence in the case

17

record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating source's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p). In some cases, even a "brief" statement identifying the relevant factors has been found adequate to articulate "good reasons" to discount a treating physician's opinion. *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

Although the ALJ generally accords more weight to opinions from a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007). When a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). The ALJ is directed to consider the factors, but is not required to provide an "exhaustive factor-by-factor analysis" in the decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

Here, the plaintiff challenges the ALJ's consideration of an opinion from her treating providers. The ALJ addressed the August 2015 opinion[4] at issue as follows:

> Treating providers Richard Hill, M.D., and Bruce Catalano, LISW, opined on August 4, 2015, that the claimant can occasionally maintain attention and concentration for extended periods of 2 hour segments, maintain regular attendance and be punctual with customary tolerance, interact with supervisors, work in coordination with or proximity to others without being distracted, deal with work stress, complete a normal workday and workweek, understand, remember, and carry out complex job instructions, socialize, behave in an emotionally stable manner, and manage funds/schedules. Dr. Hill and Mr. Catalano indicated frequent or constant in all other areas. These opinions are based on extensive treating relationships, and are generally consistent [with] the behavioral record as a whole, including indications of ongoing psychiatric symptoms, often triggered by situational stressors, but improved with conservative mental health treatment. As a result, the undersigned gives the opinions great weight.

(R. 8, tr., at 32-33; *see generally* R. 8, tr., at 660-661 (opinion).)

Plaintiff does not assert that the ALJ should have given this opinion controlling weight,[5] or that the ALJ's decision lacks good reasons for the weight he

---

[4] Dr. Hill completed a second medical statement in March 2017 (R. 8, tr., at 1126-1127), but plaintiff challenges only the ALJ's treatment of the August 2015 opinion. *See* R. 13, PageID #: 1218-1219. The ALJ gave little weight to the 2017 opinion, which opined extreme limitations in several areas. (R. 8, tr., at 33, citing tr., at 1126-1127.) The ALJ noted the extreme contrast between this opinion and the 2015 opinion, and noted while claimant has ongoing psychiatric symptoms, they have responded to conservative mental health treatment. *Id.* at 33, citing MER. The ALJ also stated that Dr. Hill's 2017 opinion was inconsistent with his own treatment notes that indicated moderate psychiatric abnormalities, at most, on examination. *Id.*

assigned the opinion, but rather she argues that the ALJ erred by "not incorporating most of the restrictions that Dr. Hill and Mr. Catalano posit into his RFC findings," and failing to explain why the limitations were not credited. (R. 13, PageID #: 1219.) Ekkens contends that, for example, her providers' finding that she was capable of only "occasionally" interacting with supervisors or working with others should have been incorporated into the ALJ's RFC, but was not. *Id.* She also asserts that a worker who can only "occasionally" be punctual or complete a normal workweek would presumably be unemployable, but argues the ALJ omitted any attendance or punctuality limitations. *Id.*

The Commissioner argues that the ALJ considered all the medical evidence before him, not solely the opinion of Dr. Hill and Catalano, in determining the plaintiff's RFC. (R. 14, PageID #: 1238-1239, 1246.) Moreover, the Commissioner asserts that the ALJ explained that the RFC was supported by other evidence in the record as well. *Id.* at 1246.

Although the ALJ did not designate the opinion of Dr. Hill and Catalano as controlling, he gave their opinion great weight. The ALJ's decision to give great weight to their opinion does not mean that the ALJ must adopt every restriction noted in their opinion. *Salisbury v. Commissioner*, No. 5:11CV2277, 2013 WL 427733, at *7 (N.D. Ohio Feb. 1, 2013) (citing *Sonnenlitter v. Commissioner*, No.

_____

[5] In fact, Ekkens states that the ALJ was correct in assigning great weight to the opinion. (R. 13, PageID #: 1219.)

1:12CV43, 2012 WL 4794639, at *15 (N.D. Ohio Oct. 9, 2012); *Smith v. Astrue*, No. 1:12CV831, 2012 WL 6607007, at *8 (N.D. Ohio Dec. 18, 2012)); *see also Barnett v. Commissioner*, No. 2:16CV902, 2017 WL 4250073, at *8 (S.D. Ohio Sept. 26, 2017) (citing *Salisbury*). While medical sources may opine about a claimant's ability to work, the ultimate responsibility for determining the claimant's RFC lies with the ALJ. *Salisbury*, 2013 WL 427733, at *7 (citing *Nejat v. Commissioner*, 359 Fed. Appx 574, 578 (6th Cir. 2009); 20 C.F.R. § 404.1527(d)(2)).

The ALJ supported with substantial evidence several aspects of the RFC in his overall discussion of the evidence. For example, reviewing the record evidence, the ALJ noted that Ekkens' mental health treatment record was relatively conservative, with an ongoing need for medication and counseling. (R. 8, tr., at 30, citing MER.) He stated that medication and therapy had improved her condition, and the record indicated that exacerbation of her psychiatric symptoms was often attributable to situational stressors. *Id.* The ALJ found that Ekkens' mental impairments are manageable with relatively conservative mental health treatment. *Id.*

However, the ALJ also found that the plaintiff continued to experience symptoms associated with major depressive disorder and panic disorder, despite her compliance with mental health treatment, that would interfere with her ability to perform complex tasks, work at a rapid pace, and interact with others. (R. 8, tr., at 28-29, citing MER; *see also* tr., at 20 (moderate limitations in interacting with others).) For this reason, the ALJ limited claimant to simple tasks without

production rate pace, but she was not precluded from performing goal-oriented unskilled work. *Id.* at 29.

The ALJ also gave great weight to the opinions of the psychological consultants Dr. Marlow and Dr. Hoyle, who opined that "claimant is capable to performing simple, routine tasks and some moderately complex tasks without strict production quotas, no fast pace tasks, and no significant interaction with others." (R. 8, tr., at 32, citing MER.) The ALJ found their opinions to be generally consistent with the behavioral evidence of record. *Id.*

What is lacking in the RFC, however, is a logical bridge between the 2015 opinion evidence of Dr. Hill and Catalano, and the mental limitations set forth in the RFC. Their opinions indicated that plaintiff's limitations included only occasionally interacting with supervisors, working in coordination with or proximity to others without being distracted, and behaving in an emotionally stable manner. Although the ALJ assigned great weight to their 2015 opinions, he failed to explain why he did not include an RFC limitation to occasional interaction with supervisors, co-workers, and others. The court is unable to determine the basis for the apparent contradiction between the great weight given to that opinion, and the lack of limitations in the RFC which would otherwise seem supported by their opinion. The ALJ's RFC finds that Ekkens "can interact supervisors, coworkers, and the public if that interaction is limited to speaking and signaling" (R. 8, tr. at 21), but such a limitation speaks to the quality of the interaction not the quantity of time spent interacting with other individuals. *See Cooper v. Comm'r of Soc. Sec.*, No.

2:18CV67, 2018 WL 6287996, at *4-*5 (S.D. Ohio Dec. 3, 2018) (footnotes omitted),

adopted by, 2019 WL 95496 (S.D. Ohio Jan. 3, 2019) (citing *Lindsey v. Comm'r of*

*Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018)

("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas

'superficial contact' goes to the quality of the interactions.") (quoting *Hurley v.*

*Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)).

> The *Cooper* court aptly stated,

> Certainly, an ALJ is not required to mirror or parrot medical opinions
> verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir.
> 2009). But where, as here, the ALJ assigns significant weight to a
> particular opinion and states it is consistent with the record, he must
> incorporate the opined limitations or provide an explanation for
> declining to do so.

*Cooper*, 2018 WL 6287996, at *5. The undersigned concludes that reversal is

required because the ALJ assigned "great weight" to plaintiff's treating providers'

opinions, found they were "based on extensive treating relationships," and

"consistent with the behavioral record as a whole," but failed to include a limitation

for "occasional" interaction as stated above. (R. 8, tr. at 21, 32-33, 660-61

(opinion).). The underlying decision lacks an adequate explanation for how the RFC

addressed that limitation or why the ALJ declined to include it.

## VIII.  CONCLUSION

The court finds that the ALJ's underlying error prevents it from performing a meaningful review of the RFC to determine whether it is supported by substantial evidence.  The decision of the Commissioner is REVERSED and REMANDED for further consideration of the relationship between Dr. Hill and Catalano's 2015 opinion and the RFC's mental limitations set forth in the ALJ's opinion.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date:  March 28, 2019